# Johnson *versus* McCurdy.

1. L. duly executed two mortgages on certain property to S., and recorded the same, but retained the mortgages in his possession, as they were without consideration. L. afterwards transferred these mortgages to M. for value, the assignments being duly executed by S. Subsequently and before the assignments were recorded, L. sold the mortgaged property to J., who purchased for value and without knowledge of the existence of the mortgages. M. brought suit on the mortgages, and the above facts having been found in a special verdict, the court entered judgment for the plaintiff. *Held*, not to be error.

2. The mortgages originally were inchoate, but not void, and when negotiated and delivered, they bound not only the mortgagor, but subsequent purchasers with notice, actual or constructive, and this latter was clearly supplied by the record of the mortgages.

3. Per AGNEW, C. J.—How far such a negotiation as took place here will be good by relation against an intervening encumbrancer or purchaser, is not a question now, for the mortgages were actually negotiated long before J. bought.

January 15th 1877. Before AGNEW, C. J., SHARSWOOD, MERCUR, GORDON, PAXSON and WOODWARD, JJ. WILLIAMS, J., absent.

Error to the Court of Common Pleas, No. 3, of *Philadelphia county :* Of January Term 1876, Nos. 139 and 140.

These were two writs of scire facias sur mortgage, issued by John McCurdy, assignee of Alexander Smith, against Charles M. S. Leslie and Charles E. Johnson, terre-tenant, to recover the principal and interest on two mortgages of $3000 each, made by Leslie on the 9th of April 1869, to Alexander Smith, and by him assigned, on the 2d of December 1871, to McCurdy, the plaintiff. A num-

[Johnson v. McCurdy.]

ber of questions were submitted to the jury at the trial, the parties to the suit agreeing that the questions and answers of the jury should together form a special verdict. From these questions and answers the following facts were disclosed : That neither the bonds nor the mortgages were ever delivered by Leslie to Smith ; that there was no debt due from Leslie to Smith, nor was any consideration given by Smith to Leslie therefor ; that Smith had no knowledge that such mortgages were made ; that Leslie put the mortgages of record on the 9th of April 1869, of which Smith had no knowledge ; that on the 2d of December 1871 McCurdy gave to Leslie a bond and mortgage of $5000, on which one year's interest was due for the two mortgages on which this suit is brought, and the bonds secured thereby ; that the assignments of said mortgages from Smith to McCurdy, duly executed by Smith, were delivered by Leslie on the 2d of December 1871, and were put on record by McCurdy June 9th 1873 ; that Smith was not present when the two mortgages and assignments were delivered to McCurdy, and had no personal knowledge of the delivery ; that Leslie continued to be the owner of the mortgaged premises until July 30th 1872 ; that Johnson, on the 30th of July 1872, became the purchaser of said premises, giving therefor $12,000, money previously deposited with Leslie ; that Johnson had no knowledge of the existence of the mortgages in suit, nor of the assignments, and did not become informed thereof until after April 1st 1873 ; that Leslie represented to Johnson, at the time of the purchase by the latter, and that Johnson believed these representations, that the premises in question were not mortgaged otherwise than by the first two mortgages from Leslie to Johnson (not those in dispute) ; that Leslie had acted as the attorney and confidential adviser for Johnson ; that Johnson could not have obtained by inquiry any knowledge contrary to the information given him by Leslie, as Smith himself had no knowledge of the contents of the mortgages or the assignments he had signed ; that at the time Leslie made the mortgages sued on, no one, other than Leslie, was interested as owner of the mortgaged property ; that at the time Leslie made these mortgages to Smith, there were other mortgages and titles to property belonging to Leslie standing in Smith's name ; that there was no evidence that McCurdy knew that there had been no delivery of the mortgage, in fact, to Smith ; that it was not shown whether McCurdy, when he took the mortgage, inquired of Leslie if the same were really due.

The jury rendered a verdict for the plaintiff for $3706 in each case, subject to the opinion of the court on the facts found as above.

The court was afterwards asked to enter judgment for the defendant, which motion they discharged and entered judgment on the verdict for the plaintiff, which was the error assigned by the defendant, who took this writ.

[Johnson *v.* McCurdy.]

*J. Fallon*, for plaintiff in error.—The mortgages sued upon having never been delivered have never existed as valid mortgages: Van Amringe *v.* Morton, 4 Whart. 382; Blight *v.* Schenck, 10 Barr 285; Parmentier *v.* Gillespie, 9 Id. 87; Younge *v.* Guilbeau, 3 Wall. 641; Rigler *v.* Cloud, 2 Harris 361; Chess *v.* Chess, 1 Penna. Rep. 32; Harrison *v.* Trustees of Phillips Academy, 12 Mass. 456; Hatch *v.* Hatch, 9 Id. 307; Hadlock *v.* Hadlock, 22 Illinois 384.

All that McCurdy acquired on December 2d 1871, was an equitable right against Leslie, estopping the latter from denying that what purported to be assignments from Smith, of valid bonds and mortgages, theretofore executed and delivered by him, Leslie, to Smith, for full consideration, were in fact what they purported to be.

This right of equitable estoppel which, as against Leslie alone, gave McCurdy what would have been equivalent to mortgages, if sued out while Leslie remained owner of the premises, was an estoppel *in pais*, not enforceable against a subsequent bonâ fide purchaser for value, without actual notice of the record of such alleged mortgages, or either actual or constructive notice or knowledge of the assignments or sale thereof, from which the equitable estoppel arises. As against such purchaser, the mortgages have no existence, and their record was a nullity.

If the law be that such estoppel as that in question may, under any circumstances, be enforced against Leslie's assigns for value, the *right* of equitable estoppel carried with it the *duty* of recording the assignments on which that right depended, as a pre-requisite to enforcing it against such subsequent purchaser. McCurdy having neglected to record the assignments, and thus voluntarily elected to keep secret the existence of his right of estoppel, cannot enforce it against Johnson, who, without actual or constructive notice of the existence of such right, or of the assignments on which the right was founded, for full value purchased the property of Leslie, relying on the latter's express representation that no such right existed: Pepper's Appeal, 27 P. F. Smith 373; Fisher *v.* Knox, 1 Harris 625; Campbell's Appeal, 5 Casey 401; Fraley's Appeal, 26 P. F. F. Smith 42; Coates *v.* Gerlach, 8 Wright 46.

*John G. Johnson*, for defendant in error.—There was no notice to McCurdy, who was a purchaser for value, that there had been no actual delivery of the mortgages to Smith, and the fact of such non-delivery cannot be set up against him.

Leslie and all his subsequent grantees are *estopped* from setting up the fact of such non-delivery.

Though there was no actual delivery to Smith in person, there was a legal delivery by reason of the delivery of these two mortgages to the recorder, for the purpose of being recorded, under the orders of Leslie, who intended that such recording should be a delivery: Doe *v.* Knight, 5 B. & C. 671; Blight *v.* Schenck, 10

[Johnson v. McCurdy.]

Barr 290; McCurdy's Appeal, 15 P. F. Smith 291; Lessee of Mitchell v. Ryan, 3 Ohio St. Rep. 377.

There was a valid delivery on the 2d day of December 1871, to McCurdy, who paid full value for the mortgages, and from that time they were good against Leslie and all who acquired rights under subsequent deeds from him: Caldwell v. Fulton, 7 Casey 482; Parker v. Hill, 8 Metc. 447; 3 Washburn on Real Property 294; Parmelee v. Simpson, 5 Wall. 86; Rathbun v. Rathbun, 6 Barb. 103.

Chief Justice AGNEW delivered the opinion of the court, January 22d 1877.

It must be conceded that the mortgages in these cases, while remaining in the hands of Leslie, the mortgagor, were not available to any one else. Even the bonds accompanying were not voluntary until delivery. A voluntary bond is protected by the seal as evidence of consideration after delivery, as regards the obligor. These cases are peculiar and depend on their own circumstances. The intent of the mortgagor, who had entire control over the instruments, was to raise money upon them. Smith, the nominal mortgagee, was but an instrument in his hands to effectuate his purpose. He could not have used the mortgages without Leslie's consent, for Leslie retained their possession for his own lawful end. But when Leslie negotiated them, using the signature of the nominal mortgagee, he then parted with them, making them binding on himself, and on all others possessed of no inconsistent rights attaching to the mortgaged premises. Johnson having purchased afterwards, was, therefore, bound by the mortgages, unless he had no notice of them, actual or constructive. It is obvious that it is the recorded mortgage, not the assignment, which concerns him as a purchaser, and of which he should have notice. The encumbrance, not the ownership of it, was important. If he knew, or ought to have known of it, he did not stand as a bonâ fide purchaser, protected against a secret encumbrance upon the land he was bargaining for. The mortgages were clearly constructive notice, being duly recorded, and lying directly in the line of his search. He was bound to inquire into their existence as valid encumbrances; and inquiry would have traced them to the possession of McCurdy as a bonâ fide holder by the negotiation of Leslie himself. It is said inquiry would have led to no result, for Leslie deceived him when he purchased by withholding the information. But that is nothing; the law imposed the duty of a search on the purchaser, which would have led to a knowledge of the mortgages. These Leslie could neither produce nor explain away, for they were in the hands of McCurdy.

It is argued that the mortgages, when recorded, were not binding on Leslie and were therefore void. The conclusion is not logical.

[Johnson *v.* McCurdy.]

They were not binding, it is true, until he negotiated them. They were not absolutely void, for if so Leslie could infuse no life into them by negotiation. They were inchoate, but not void, until he negotiated and delivered them. The purpose of recording was to enable him to negotiate, by anticipating other liens. How far such a negotiation as took place here would be good by relation, against an intervening encumbrancer or purchaser, is not a question now, for they were actually negotiated long before Johnson bought. No one has been injured, for, like a judgment to secure future advances, the recording was notice, and the actual advance was precedent. Unless we hold that a mortgage for the purpose of negotiation is absolutely void, because no immediate consideration passed, we must sustain these. True, the consideration was not complete, and Leslie could have defended against one who obtained surreptitious possession, without delivery ; yet his act became complete when he himself negotiated and delivered them, and there is no intervening bonâ fide encumbrancer or purchaser to complain. It is not necessary, therefore, to invoke the doctrine of equitable estoppel.

Judgment affirmed in each case.